**This order is SIGNED.**

**Dated: January 27, 2022**



**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>BENNETT EDWARD HORTMAN, II,<br><br>Debtor, | Bankruptcy No. 19-29252<br><br>Chapter 7<br><br>Honorable William T. Thurman |
| BROCK L. WOOD; and JACKSON WOOD,<br><br>Plaintiffs.<br><br>vs.<br><br>BENNETT EDWARD HORTMAN, II,<br><br>Defendant. | Adversary Proceeding No. 20-02021 |

### MEMORANDUM DECISION ON DISCHARGEABILITY CLAIMS
### AGAINST DEFENDANT

This action came before the Court for trial on November 19 and 20 and concluded on November 29, 2021 (the "Trial"). At the Trial, Plaintiffs Brock L. Wood and Jackson Wood ("Wood Cousins" or "Plaintiffs") were represented by John W. Call of Nygaard, Coke and Vincent, L.C.; while the Defendant, Bennett Edward Hortman, II ("Hortman" or "Defendant" or "Debtor"), was represented by Adam Ford of Ford & Crane, PLLC.

1

After receiving evidence and hearing the arguments of counsel at trial, along with considering any briefs and proposed findings of fact and conclusions of law provided to the Court, as well as a review of the record as a whole, the Court now enters the following findings of fact and conclusions of law to accompany the Court's judgement on the matter at hand. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, which are made applicable to this proceeding under Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Decision"). To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are also adopted as such.

## I.    JURISDICTION AND VENUE

The jurisdiction of this Court is properly invoked under 28 U.S.C. §§ 157(b) and 1334. Plaintiffs' claims against Defendant are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), and may be heard and determined by this Court. The jurisdiction of this Court is not disputed and is hereby determined to be present. The Court has similarly determined venue to be proper pursuant to the provisions of 28 U.S.C. § 1409. The Court finds notice for considering the Plaintiffs' 11 U.S.C. § 523 claims at trial to be adequate and proper in all respects.

## II.   SUMMARY

The Plaintiffs commenced this adversary proceeding seeking a determination that their claims against the Defendant should be determined non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). The Plaintiffs' main argument was that the Defendant's actions amounted to a conversion of the Plaintiffs' property, and therein constituted willful and malicious injury to the Plaintiffs under § 523(a)(6). Additionally, the Plaintiffs argue that the

2

Defendant committed embezzlement and/or larceny under § 523(a)(4). Although mentioned during the trial, the Plaintiffs did not allege claims under § 523(a)(2) in their Complaint[1] and did in fact limit their claims at the inception of the trial to only §§ 523 (a)(4) and (a)(6). Therein, the overarching issues at hand involve the interpretation of a contract for services, how it figured in the operations and use of cryptocurrency, and subsequently how the actions leading to the contract's failure may constitute reason for claims to be nondischargeable.

### III. FACTS

In compiling the factual record addressed in this decision, the Court has adopted portions of each parties' Proposed Findings of Fact and Conclusions of Law[2] and has been persuaded by particular portions of testimony presented to the Court at trial.

#### A. Structure and Ownership of BET Capital, LLC

Addressed by both parties is the ownership and influence of Defendant Bennett Hortman, II upon BET Capital, LLC ("BET"), a Utah Limited Liability Company. Although it was stipulated as an uncontested fact in the Pre-Trial Order,[3] that the Defendant was the sole owner of BET, the testimony of Ernest Woods, Timothy Covington, as well as the Defendant, persuades the Court that all three were owners/members at the time of consequence to the current action. More specifically, the time of consequence being the lead up, execution, and subsequent failed performance of the service contract between Plaintiffs and BET.

---

[1] Pl.'s Complaint, ECF No. 1.
[2] Pl.'s Proposed Findings of Fact and Conclusions of Law, ECF No. 35; Def.'s Proposed Findings of Fact and Conclusions of Law, ECF No. 38.
[3] Pre-Trial Order, ECF No. 28.

### B. Negotiation and Execution of Written Contract for Ravencoin

The allegations made by the Plaintiffs center around the execution and implementation, or the lack thereof, of a written contract between the Plaintiffs and BET. That contract was admitted and received and is entitled, the Cryptocurrency Mining Services Agreement (the "Agreement").[4]

#### 1. Pre-Agreement Conversations and February 27, 2018 Conference Call

The parties agree that the lead-up to the execution of the Agreement began as a result of the Defendant's response to a post made by one of the Plaintiffs within a cryptocurrency interest group on Facebook; the post therein was a solicitation for crypto-mining services, specifically someone with a particular set of capabilities or know-how. The Defendant responded to the Plaintiffs' inquiry, referencing his mining company BET, and the parties set up a phone call for the afternoon of February 27, 2018 to discuss a potential business relationship. Further, although various terms in cryptocurrency are involved in this matter, this action can be boiled down to the simple terms of the Agreement, and whether/how it was breached.

As a result of these initial conversations, the Defendant began to mine Ravencoin (RVN), a form of cryptocurrency, on equipment purported to be owned solely by the Defendant within BET's warehouse. This was before the Agreement was signed by the parties. This "test run" was successful enough for the Defendant to make representations to the Plaintiffs about BET's ability to mine RVN on the February 27, 2018 conference call. During the phone call, the parties had negotiated to memorialize an agreement wherein BET would mine RVN for the Plaintiffs.

---

[4] Pl.'s Exhibit No. 1.

**2. February 28, 2018 Execution of the Agreement**

The following day, February 28, 2018, the parties executed the Agreement.[5] Pursuant to the Agreement, the Plaintiffs made two separate transfers of Bitcoin ("BTC") totaling 16 Bitcoin, on February 28 and March 1, 2018, to a cryptocurrency wallet held solely by the Defendant, as an individual, not BET. Additionally, the Agreement outlined that BET was to provide a list of equipment purchased in furtherance of this contract to the Plaintiffs as an exhibit to the Agreement, specifically Exhibit A. That list was never provided, and testimony as to why is both muddied and unconvincing.

Later on March 1, the Defendant, on behalf of BET, converted the 16 BTC to cash, and then made two separate deposits into BET's bank account for the total amount of the cash value of the 16 BTC. The Court notes, as do the parties, that any difference in value between the 16 BTC at the time of the Plaintiffs' initial transfer to Defendant, and the Defendant's transfer into BET Capital's account, was due to the market volatility of BTC.[6]

**C. Failure under Contract**

Once the cash deposit was made into the BET account, a number of transfers took place out of the account.[7] The Court finds that each transfer was in accordance with common BET practices. BET members frequently purchased equipment via their personal credit cards or other lines of credit. Therein, the transfers that the Plaintiffs point to would actually seem to be in line with routine reimbursements by BET to its members for company expenditures. Importantly,

---

[5] Pl.'s Exhibit No. 1.
[6] Representations by each party point to 16 BTC at time of Plaintiffs' transfer being valued at $169,395.93; while the deposit into BET Capital's account was $169,322.16.
[7] *See* Pl.'s Exhibit No. 4.

5

there is nothing in the plain language of the Agreement that states, or even implies, that the Plaintiffs' payment to BET could not be used for ordinary expenses like labor or overhead, such as electricity (a large expense for crypto-mining operations). Additionally, a number of "round number" transfers by BET were either attributed to employees' wages, or to private contractors performing services for BET. Another example of ordinary expenses that were not prohibited, neither explicitly nor implicitly, by the Agreement.

Shortly after the Agreement was executed, there was a massive spike in the difficulty and cost of mining RVN, due in most part to the coin being listed on an exchange. Each party represented that RVN's absence from a crypto-exchange was of paramount importance for entering into the Agreement in the first place, and the coin's inclusion onto an exchange increased the mining difficulty far beyond the parties' expectations.

In the days following the execution of the Agreement, and the subsequent spike in difficulty for mining RVN, the parties did discuss possible terms of a settlement to the Agreement. Although general terms were discussed, nothing near an agreement was ever made. The most specific settlement offer is contained in an April 9, 2018 email from Plaintiff Brock Wood to BET, requesting 16 BTC for settlement of the Agreement, even going so far as to represent that this request was a "haircut" due to the diminished value of BTC at the time.[8]

Nonetheless, the parties continued under the Agreement as it was executed on February 28, 2018, until BET wound down and closed shop sometime in the Summer of 2018. In that interim, the Defendant had left Utah to begin to work as a salesman in an attempt to both raise funds for BET and provide for his own family. The Defendant discussed this leaving with the

---

[8] Pl.'s Exhibit No. 5.

Plaintiffs during the settlement discussions, instructing them to continue negotiations with his attorney, Mr. Ford. In leaving the state, the Defendant left the operations and decision-making for BET solely in the hands of Ernest Lee Woods, a co-member of BET. During this period, several business decisions were made by Mr. Woods, including the liquidation of certain coins mined, whether it be RVN or Ethereum or Bitcoin, to pay the bills of BET. The Court is persuaded by the testimony that the business decisions made during this time were in furtherance of BET's ultimate goal, which was to stay in business. Nevertheless, Mr. Woods found it necessary to close shop, without consulting the Defendant or Mr. Timothy Covington, another co-member of BET. As such, BET as a functioning business in large part ceased. Although performance under the Agreement was not due until September of 2019, the contract had all but ended with BET's closing down shop. In closing down, Mr. Woods cleared out the company's warehouse and sought to return/turnover, liquidate and hold certain equipment that was in BET's possession. This entailed Mr. Woods bringing some of BET's equipment to his own home to hold. BET never returned any equipment, or even paid or transferred anything for that matter, back to the Plaintiffs. The value and subsequent cash derived from the initial BTC payments from Plaintiffs to BET was completely consumed in payment for personal services, purchase of equipment etc., and other expenses in furtherance of the Agreement.

### D. Post-Failure Posturing

The Plaintiffs brought suit against BET and three John Does in Utah state court on September 9, 2018. Default Judgment was entered against BET Capital, LLC on March 22, 2019. After an evidentiary hearing, the state court entered a judgment for $169,395.93 on April

11, 2019 in favor of the Plaintiffs, the cash dollar value of the original BTC transfers to BET.[9] On October 28, 2019, Plaintiffs amended their state action to include both Ernest Lee Woods and Bennett E. Hortman, II as individual defendants in their lawsuit against BET.[10] Subsequently on December 19, 2019, counsel for Debtor filed notice in state court of the Debtor's petition for protection under Chapter 7 of the Bankruptcy Code filed on the very same day.[11] Interestingly, the notice states: "This matter is stayed [. . .] as to Defendants Bennett Hortman and BET Capital, LLC (owned solely by Hortman), pursuant to the automatic stay of bankruptcy." The Court notes that this is a fairly extraordinary statement by the Defendant, as no stay had been issued by this court as to BET.

Additionally taking place in the post-failure timeframe of the Agreement, it is uncontroverted that the equipment that is attributed to be in furtherance of the Agreement was disposed of by Ernest Lee Woods' delivery of the equipment to his Chapter 7 Trustee within his own individual bankruptcy case. The equipment was never returned or turned over to the Plaintiffs. Further, it is unsettling that BET never produced the list of equipment, as had been agreed to be provided in Exhibit A of the Agreement. Clearly, the business dealings between the Plaintiffs and BET appear to be inadequate and lacking in detail, which likely contributed to the fallout between the Plaintiffs and BET. It is impossible to identify any equipment that could be defined as "property" under Section 523(a)(6), let alone the value of such property to compute possible damages for claims of nondischargeability.

---

[9] Pl.'s Exhibit No. 6.
[10] Pl.'s Exhibit No. 8.
[11] Pl.'s Exhibit No. 9.

**E. Procedural Posture and Trial**

The current adversary proceeding was brought by Plaintiffs on March 18, 2020. An Amended Order Governing Scheduling and Preliminary Matters was entered on May 29, 2020, and remained in effect throughout the current proceeding.[12] Further, the Court entered the Pre-Trial Order on September 3, 2021.[13] Additionally, a Motion in Limine was filed by the Plaintiffs on September 24, 2021, and subsequently denied on November 19, 2021.

Following the conclusion of a three-day trial on November 29, 2021, the Court took the matter under advisement until the entry of this Decision.

## IV. DISCUSSION

The Plaintiffs contend that their claims against the Defendant should be determined to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). To reiterate, the scope of the Plaintiffs' claims were specifically narrowed to the aforementioned sections at trial.

In beginning the Court's discussion, it is imperative to note the evidentiary standard for Section 523 nondischargeability actions. Plaintiffs in Section 523 actions need prove each element of their claim "by preponderance of the evidence."[14] Therein, the Court reviews the Plaintiffs' allegations and arguments under this standard, and will only hold a debt to be nondischargeable upon showing that the Debtor's actions violated either § 523(a)(4) or § 523(a)(6) by preponderance of the evidence.

---

[12] ECF No. 10.
[13] ECF No. 28.
[14] *See Grogan v. Garner*, 498 U.S. 279 (1991).

**A. 11 U.S.C. § 523(a)(4)**

To begin, § 523(a)(4) provides that a debtor may not receive a discharge from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Thus, if the Plaintiffs here successfully prove their claim by the preponderance of the evidence against Debtor for fraud or defalcation in a fiduciary capacity, embezzlement, and/or larceny, then their claim is nondischargeable under the applicable provisions.

### 1. Fraud or Defalcation While Acting in a Fiduciary Capacity

The first possible prong of § 523(a)(4) analyzed by the Court is for "fraud or defalcation while acting in a fiduciary capacity." Therefore, the Plaintiffs have to establish the following two elements to prevent the discharge of Mr. Hortman's debt: (a) a fiduciary relationship between Mr. Hortman and the Plaintiffs, and (b) fraud or defalcation committed by Mr. Hortman in the course of that fiduciary relationship. The Court analyzes this prong of § 523(a)(4) via those two elements below. However, the Court struggles to find either has been proved by preponderance of the evidence.

**a. Fiduciary Capacity**

For purposes of § 523(a)(4), the question of whether a fiduciary relationship is present is a matter of federal law.[15] However, "state law is relevant to this inquiry," and the Tenth Circuit requires the Court "must find that the money or property on which the debt at issue was based was entrusted to the debtor."[16] Essentially, the fiduciary relationship must be shown to exist prior

---

[15] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1997) (internal citations omitted).
[16] *Id.*

to the creation of the debt in controversy.[17] "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith nor an inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability."[18] Rather, an "express or technical trust must be present for a fiduciary relationship to exist under §523(a)(4)."[19] Importantly here, ordinary commercial relationships do not usually qualify under this provision.[20]

Upon review of the facts, the Court simply cannot find the existence of a fiduciary relationship in the context of this ordinary—albeit, unordinary industry—commercial relationship. The Plaintiffs' claim arises solely out of the Agreement, and upon careful reading of the Agreement, as well as the testimony presented to the Court, the Court finds it clear that no such fiduciary relationship arose out of the ordinary commercial relationship created by the Agreement. As such, the Plaintiffs' § 523(a)(4) claim fails the first available prong, for fraud or defalcation while acting in a fiduciary capacity, prior to even addressing any allegations of fraud or defalcation.

### b. Fraud or Defalcation

Although unnecessary due to the foregoing subsection on fiduciary capacity, the Court continues its analysis of the first prong of § 523(a)(4). Thus, assuming the Court had found the

---

[17] *See id.* (citations omitted).
[18] *Id.* at 1372 (citations omitted); *see also Upshur v. Briscoe*, 138 U.S. 365, 375 (1891) ("Within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.").
[19] *See Fowler Bros.*, 91 F.3d at 1371 (citations omitted).
[20] *See Barenberg v. Burton (In re Burton)*, 2010 WL 3422584, at *5 (B.A.P. 10th Cir. 2010); *see also Holaday v. Seay (In re Seay)*, 215 B.R. 780 (B.A.P. 10th Cir. 1997).

existence of a fiduciary relationship, the Plaintiffs would need now establish the Debtor committed fraud or defalcation in that fiduciary capacity. However, similar to the preceding, the Court finds that the Debtor did not commit fraud or defalcation in their failure under the contract.

### 2. Embezzlement

The Court now turns to the Plaintiffs' embezzlement claims under § 523(a)(4). "For purposes of § 523(a)(4), embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.[21] It is hornbook law that the elements required to prove embezzlement are: (1) the entrustment, (2) of property (3) of another (4) that is misappropriated (used or consumed for a purpose other than for which it was entrusted), (5) with fraudulent intent.[22] Important to note is that embezzlement requires *animus furandi*, or the intention to steal.[23] In addition, embezzlement requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.[24]

In applying these rules to the instant, the Plaintiffs' embezzlement claim fails. Although slightly related, the Court sees the Plaintiffs' embezzlement claim as twofold; one alleges the embezzlement of funds paid under the contract, the other alleges the embezzlement of equipment and/or cryptocurrency arising under the contract. Both fail.

---

[21] *Ingram v. Nelson (In re Nelson)*, Adv. No. 13-2478, 2014 WL 1347031, at *4 (Bankr. D. Utah Apr. 4, 2014).
[22] *See, e.g.*, *Yaping Lin v. Pacheco (In re Pacheco)*, Adv. No. 19-2076, 2021 Bankr. LEXIS 3442, at *26 (Bankr. D. Utah Dec. 16, 2021); *Jordan Credit Union v. Turley (In re Turley)*, Adv. No. 10-2004, 2012 WL 369275, at *6 (Bankr. D. Utah Feb. 3, 2012); *In re Musgrave*, 2011 WL 312843, at *5 (B.A.P. 10th Cir. 2011).
[23] *See In re Pacheco*, 2021 Bankr. LEXIS 3442, at *26.
[24] *See In re Nelson*, 2014 WL 1347031, at *4.

Beginning with the allegations of embezzlement of funds paid under the Agreement, the Court finds all but one element of embezzlement absent. There was no entrustment of the funds to the Debtor, the funds were part of a bargain. The funds do represent property for purposes of embezzlement. The property was not that of the Plaintiffs, it belonged to the Debtor upon executing the Agreement. The funds were not misappropriated, there was no precise allocation of the funds stipulated to within the Agreement, and therefore BET was well within its rights to use the funds to pay wages and overhead, as well as to purchase equipment. Lastly, fraudulent intent was absent. No evidence presented show the Debtor had an intent to steal. However, the Debtor's counsel pointed out how the funds from the transferred BTC were all within the Debtor's personal account, by necessity of how cryptocurrency wallets worked at the time, and the parties stipulated to the fact that every penny was transferred into BET's account. If Debtor had an intent to steal, convincing evidence was needed which the Court cannot find here.

Now onto the Plaintiffs' claim that the Debtor embezzled the equipment and/or cryptocurrency. The evidence presented requires this claim too must fail. As the Court sees it, this property was not the sort susceptible to embezzlement. The property belonged to BET, up until BET failed to perform under the Agreement. At that point, the Plaintiffs were entitled to receive the property as a sort of makeweight under the contract. The failure of BET to do so is troubling but is not embezzlement. The Court finds most of all there was no entrustment, nor was there any fraudulent intent. Had the Debtor intended to steal the property, he most likely would not have allowed Mr. Woods to retain possession of the property, let alone deliver it to the trustee in his own bankruptcy case. Similarly, the Court is not persuaded that the Debtor has embezzled cryptocurrency. In constructing the argument on behalf of Plaintiffs, seeing as they have not produced sufficient evidence trial, the Court finds the first three elements may have

been satisfied in regard to any RVN mined on BET machines. However, there was no evidence at trial that any RVN was misappropriated nor was there any evidence that the Debtor had fraudulent intent in any appropriation of the RVN or cryptocurrency plausibly tied to the Plaintiffs.

### 3. Larceny

The Plaintiffs also alleged larceny under § 523(a)(4). The Tenth Circuit adheres to the common-law definition of larceny.[25] Under § 523(a)(4), larceny is the "felonious stealing, taking and carrying, leading, riding, or driving away another's personal property, with intent to convert it or to deprive the owner thereof."[26] The difference between larceny and embezzlement is that, "with embezzlement, the debtor initially acquires the property lawfully whereas, with larceny, the property is unlawfully obtained."[27]

Here, the Plaintiffs' larceny claim may be swiftly dealt with by the fact that no property was ever unlawfully acquired. The property that Plaintiffs claim was subject to larceny was all lawfully in BET's possession, be it the equipment or cryptocurrency. Further, assuming that was not the case, there was insufficient evidence presented that the Debtor, himself, intended to convert the equipment or deprive the owners of the equipment. Actually, there was testimony at trial that negotiations for a settlement involving the equipment were made, up until the Debtor left to reassume his job as an out-of-state salesman. Additionally, there is insufficient evidence that the Debtor ever stole, took, carried, led, rode, or drove any of the property alleged to have

---

[25] *Hand v. United States*, 227 F.2d 794, 795 (10th Cir. 1955).
[26] *Utah Behavior Servs. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017) (quoting *United States v. Smith*, 156 F.3d 1046, 1056 (10th Cir. 1998)).
[27] *In re Bringhurst*, 569 B.R. at 823 (quoting *Wonjoog Kim v. Hyungkeun Sun*, 535 B.R. 358, 367 (B.A.P. 10th Cir. 2015)).

been subject to larceny. As such, the Plaintiffs' larceny claim fails, and consequently the entirety of the Plaintiffs' § 523(a)(4) claim categorically fails.

### B. 11 U.S.C. § 523(a)(6)

Under Section 523(a)(6), a debt arising from the "willful and malicious injury by the debtor to another entity or to the property of another entity" is to be excepted from discharge. Generally, this section was drafted with the purpose of precluding a debt arising from the debtor's tortious conduct from discharge.[28] Here, the Plaintiffs wish to bar the Defendant's discharge due to the Defendant's alleged willful conversion of the Plaintiffs' property. The Plaintiffs in their briefings correctly note that § 523(a)(6) does not include "conversion" in its statutory language, but courts have outlined that "willful and malicious injury was intended to include willful and malicious conversion."[29] Further, "conversion is generally defined as a wrongfully assumed dominion over personal property by one person to the exclusion of possession by the owner and in repudiation of the owner's rights."[30] As such, the allegation of conversion could plausibly satisfy the requirements of § 523(a)(6).

"For an injury to be 'willful,' there must be a deliberate or intentional injury, not merely 'a deliberate or intentional act that leads to injury.'"[31] "A willful injury may be established by direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury

---

[28] *See Caprice Capital, LLC v. Ford (In re Ford)*, Adv. No. 18-2155, 2021 Bankr. LEXIS 2997, at *35 (Bankr. D. Utah Oct. 29, 2021).
[29] *In re Auto Outlet, Inc.*, 71 B.R. 674, 676 (Bankr. D. Utah 1987).
[30] *Id.*
[31] *In re Judge*, 630 B.R. 338, 344 (B.A.P. 10th Cir. 2021) (citing to *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (B.A.P. 10th Cir. 2020)).

15

was substantially certain to occur."[32] Essentially, "to constitute a willful act under § 523(a)(6), the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it."[33] As to the "malicious" element for § 523(a)(6), the Tenth Circuit BAP best outlined the element in its *In re Johns* decision:

> Malicious injury requires a wrongful act done without just cause or excuse by a debtor who intended the resulting injury. . . . The requisite intent may be established by either direct or indirect evidence. Intent of willful injury can be demonstrated indirectly by evidence of both the debtor's knowledge of the creditor's rights and the debtor's knowledge that the particularized injury will result from its conduct.[34]

Applying this interpretation of willful and malicious injury, the Court finds that the Plaintiffs have failed to establish that the Debtor's conduct was willful and malicious by preponderance of the evidence. The Court has considered the totality of the circumstances in its review of the facts presented, and the evidence shows that Mr. Hortman and his fellow members at BET fully intended to perform under the Agreement when it was executed. Further, the evidence shows that the Debtor made numerous efforts in preparation and in furtherance of the Agreement.

A lengthy amount of time at trial was devoted to BET's bank statements and analyzing various expenditures, wherein the Court sees nothing more than ordinary small business transactions albeit in the cryptocurrency world. BET made payments reimbursing its members, or affiliated parties, for equipment purchases in furtherance of the Agreement. Although the equipment was never turned over to the Plaintiffs upon BET's failure to perform, the Court finds

---

[32] *In re Smith*, 618 B.R. at 912.
[33] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).
[34] *In re Johns*, 397 B.R. 544, 548 (B.A.P. 10th Cir. 2008).

it difficult to see that the failure to return the equipment was willful and malicious. When the Debtor left the operations for his out-of-state sales job, Mr. Woods was left in charge of the warehouse with the equipment. No evidence presented at trial points to the Debtor's intent for the Plaintiffs to never receive the equipment, and it was certainly not the Debtor's willful act for the property to be turned over in Mr. Woods' bankruptcy. An unfortunate result from objectionable business judgment, but nothing rising to the level of willful and malicious.

Further, the Court finds that the Debtor made efforts with his personal machines to ensure BET's performance under the contract was feasible, although the Plaintiffs allege this was for some nefarious purpose. The Court finds the Defendant's testimony on that point credible. The Plaintiffs' contention that this conduct was evidence of wrongdoing is not persuasive. Further, the Debtor began his research on his own machines prior to entering into the Agreement. The Court finds the Defendant's, as well as the other BET members', testimony credible and convincing, in that it was common practice to mine cryptocurrency for personal gain on personal computers alongside company computers mining for clients. As the Court sees it, there is nothing nefarious in such a business practice. No evidence presented at trial outlines how this research injured the Plaintiffs; and even under the Plaintiffs' misinterpretation of the Agreement, insufficient evidence was presented how this research was willful and malicious. Again, the Plaintiffs' lack of understanding of this business arrangement, or how businesses in this industry operated, is not the fault of the Debtor.

The discussion above outlines a persistent issue with the Plaintiffs' arguments. The Agreement as is, presents only an end-goal, and had another interpretation been the goal of the Plaintiffs then perhaps they should have bargained for such.

In addition to the foregoing, under § 523(a)(6), there must be a showing of willful and malicious injury by the debtor to another or to the property of another. The Court cannot find that willful and malicious conduct causing injury to the Plaintiffs, occurred here.

The only real possibility for the Plaintiffs to prevail under this section would be to show willful and malicious injury to the Plaintiffs' property. As discussed prior, a major problem with the Plaintiffs' case is the lack of a clear description or list of the equipment procured in furtherance of the Agreement, as was to be identified in Exhibit A. Following the execution of the Agreement, BET was to provide the list as Exhibit A to the Agreement within forty-five days; however, BET failed to do so. At trial, evidence was presented that backed the notion that equipment was purchased in furtherance of the Agreement; however, no evidence or testimony conclusively outlined the exact equipment, or any list of such, purchased in furtherance of the Agreement.[35] Based on similar testimony at trial, Plaintiffs may have made further requests for the Exhibit A list, and the list may have even been created and simply never provided, but no convincing evidence or testimony to either contention was ever produced at trial. Accordingly, the Court fails to find there was any injury to property belonging to the Plaintiffs.

In addition, § 523(a)(6) states the property must be "property of another entity." Here, although the parties casually referred to the computer equipment as the Plaintiffs' equipment, the Plaintiffs had no ownership in the actual equipment. At best, they had only a security interest in whatever equipment BET procured in order to perform under the Agreement.

Had the property Plaintiffs ascribe ownership to been specifically identified and clearly owned by Plaintiffs, and if BET had subsequently converted it somehow, the Plaintiffs would

---

[35] Pl.'s Exhibit No. 4.

have had a better case under this section. Conversion as a cause of action is possible, in regard to secured property of another being held by a debtor; but again, the Court cannot find any identifiable property that could be either owned by the Plaintiffs or secured in their favor. The soured relationship between BET and Plaintiffs is due in large part to both parties' negligence throughout their business deal. However, mere negligence does not measure up to willful and malicious conduct.

## V. CONCLUSION

There was seemingly a breach of contract by BET, specifically in its failure to turnover equipment to the Plaintiffs upon BET's failure to perform under the Agreement, as well as the defaulted noted in the state court judgment. However, the Court cannot find or conclude that the Defendant committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny under 11 U.S.C. § 523(a)(4), nor committed willful and malicious injury to the Plaintiffs or their property under 11 U.S.C. § 523(a)(6).

A separate judgment accompanies this Memorandum Decision.

-----------------------------------END OF DOCUMENT------------------------------------

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION AFTER TRIAL** shall be made on the following parties through the CM/ECF system:

- **John W. Call** – attorneys@ncvlaw.com ; john@ncvlaw.com
- **Adam D. Ford** – adam.ford@fordcranelaw.com
- **Stephen W. Rupp** – rupptrustee@mbt-law.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Bennett Edward Hortman, II
157 E 300 N
Spanish Fork, UT 84660